UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| JOHN F. THOMAS, | ) | |
|     Petitioner, | ) | |
| | ) | Nos. 1:09-cr-126, 1:18-cv-106 |
| v. | ) | Judge Collier |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
|     Respondent. | ) | |

## RESPONSE IN OPPOSITION TO PETITIONER'S
## MOTION FILED PURSUANT TO 28 U.S.C. § 2255

The United States of America hereby responds in opposition to petitioner's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255. Petitioner has not established any basis upon which relief may be granted, so his motion should be denied.

## FACTUAL AND PROCEDURAL HISTORY

In 2010, petitioner pleaded guilty and was convicted of attempted bank robbery, in violation of 18 U.S.C. § 2113(a) and (d), and using and carrying a sawed-off shotgun during and in relation to that crime of violence, in violation of 18 U.S.C. § 924(c). (R. 39, Judgment.) Specifically, while at a bank's drive-through window, petitioner passed a note to the teller referencing "this bomb" and giving her 30 seconds to "give [him] as much money" as possible. (Revised Presentence Report ("PSR") at ¶ 7.) The teller saw that petitioner had a sawed-off shotgun on his lap and had his hand on what appeared to be a suitcase. (*Id*. at ¶ 8.) Instead of acquiescing to petitioner's threat and demand, the teller quickly left the window and contacted law enforcement; petitioner drove away. (*Id*.) The Court sentenced petitioner to 183 months' imprisonment, consisting of 63 months for the attempted bank robbery, followed by the statutorily mandated 120-month minimum for the firearms offense. (*Id*.) The Sixth Circuit affirmed petitioner's convictions and sentence on direct appeal. (R. 53, Sixth Circuit Order.)

More than six years later, petitioner filed a motion pursuant to 28 U.S.C. § 2255. (R. 58, § 2255 Motion.) As ordered by the Court (R. 60, Order), the United States now responds.

## STANDARD OF REVIEW

The relief authorized by 28 U.S.C. § 2255 "does not encompass all claimed errors in conviction and sentencing." *United States v. Addonizio*, 442 U.S. 178, 185 (1979). Rather, to obtain relief, a petitioner must establish (1) an error of constitutional magnitude; (2) a sentence outside the statutory limits; or (3) an error of fact or law so fundamental as to render the entire proceedings invalid. *Moss v. United States*, 323 F.3d 445, 454 (6th Cir. 2003). He "must clear a significantly higher hurdle than would exist on direct appeal" and show a "fundamental defect in the proceedings which necessarily results in a complete miscarriage of justice or an egregious error violative of due process." *Fair v. United States*, 157 F.3d 427, 430 (6th Cir. 1998).

## ARGUMENT

Petitioner contests his § 924(c) conviction and sentence in light of *Sessions v. Dimaya*, 138 S. Ct. 1204 (2018). (R. 58, § 2255 Motion at 4.) Specifically, he argues that § 924(c)(3)(B) "suffer[]s from the same indeterminacy" as the statute deemed vague in *Dimaya* and that his attempted bank robbery offense is not a qualifying crime of violence. (*Id.*) But *Dimaya* held only that 18 U.S.C. § 16(b) is unconstitutionally vague; it expressed no opinion about the nearly identical language in 18 U.S.C. § 924(c)(3)(B).[1] On that basis alone, dismissal is appropriate.

---

[1] Indeed, even before *Dimaya*, this Sixth Circuit identified a crucial difference between § 16(b) and § 924(c):
> Unlike the ACCA and INA, which require a categorical approach to stale predicate convictions, 18 U.S.C. § 924(c) is a criminal offenses that requires an ultimate determination of guilt beyond a reasonable doubt—by a jury, in the same proceeding. *This makes all the difference*."

*Shuti v. Lynch*, 828 F.3d 440, 449 (6th Cir. 2016) (emphasis added). *Dimaya* thus constitutes a new and substantive rule of law only with regard to § 16(b). Because *Dimaya* did not invalidate § 924(c)(3)(B), it cannot reset the one-year limitation period under 28 U.S.C. § 2255(f)(3) for

2

In any event, § 924(c) makes it a federal crime to use or carry a firearm during and in relation to a crime of violence, which is defined as a federal felony offense that

(A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

(B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 924(c)(3). Because § 924(c)(3)(A) defines "crime of violence" by reference to the "element[s]" of an offense, it necessarily requires a categorical approach, under which courts examine the statutory definition of the crime that involved the firearm. And the United States has previously assumed that 924(c)(3)(B) likewise requires a categorical approach, under which courts would decide whether the requisite substantial risk of force inheres in the "ordinary case" of the crime. But the United States now submits that § 924(c)(3)(B) should instead be construed as requiring a conduct-based, case-specific approach that assesses a defendant's actual conduct.[2] Such a construction of § 924(c)(3)(B) comports with the text and context of the statute, is supported by the canon of constitutional avoidance, and is consistent with Supreme Court

---

motions, like petitioner's, contesting the propriety of a § 924(c) conviction. Accordingly, this Court could reasonably dismiss petitioner's motion as untimely.

[2] *Dimaya* deemed § 16(b) vague because of the combination of its "substantial risk" feature and the categorical approach. *Dimaya*, 138 S. Ct. at 1214-15 (plurality opinion) (disavowing the view that the substantial-risk feature was "alone problematic" and expressing "no[] doubt" about the constitutionality of applying a "substantial risk [standard] to real-world conduct"). A plurality of the *Dimaya* Court viewed § 16(b) as "[b]est read" to require a categorical approach, but § 16(b) is often—*e.g.*, as presented in *Dimaya* itself—used to classify a prior conviction from another court in otherwise unrelated proceedings. *Id.* at 1217 (noting that the United States had not asked the Court to abandon the categorical approach in that context). And four judges reasoned that a categorical approach may not be appropriate for language like § 16(b)'s. *See id.* at 1233 (Gorsuch, J., concurring) (expressing willingness to consider "in another case" whether "precedent and the proper reading of language" like § 16(b)'s actually requires a categorical approach); *id.* at 1242 (Thomas, J., joined by Kennedy and Alito, JJ., dissenting) (advocating that the categorical approach be "abandon[ed]" under § 16(b)). *Dimaya* did not include any holding by a majority of the Court that § 16(b) requires a categorical approach, and it necessarily leaves open the same question in the § 924(c)(3)(B) context.

3

authority. A case-specific approach also makes particular sense in the context of § 924(c), which—unlike § 16(b) or the ACCA, as the Sixth Circuit has previously recognized—employs the term "crime of violence" exclusively to describe the circumstances of conduct for which the defendant is presently charged. *See Shuti*, 828 F.3d at 449.

1.  Section 924(c) should be interpreted to require a case-specific approach.

A § 924(c) conviction requires a jury to find, or the defendant to admit, that the defendant "committed all the acts necessary to be subject to punishment for" a qualifying federal crime and that his commission of that crime had a sufficient nexus to his use, carrying, or possession of a firearm. *United States v. Rodriguez-Moreno*, 526 U.S. 275, 280 (1999). That determination thus inherently requires consideration of, and determinations about, the unlawful course of conduct charged as a "crime of violence" under § 924(c)(3)(B). Unlike in the context of a recidivist sentencing enhancement (like the ACCA) or the classification of a prior offense for purposes of determining an alien's removability (like § 16(b) in *Dimaya*), § 924(c)(3)(B)'s definition of a "crime of violence" is never applied to a prior conviction, the specific facts of which may not be before the court. Instead, a prosecution under § 924(c) will, by necessity, involve a "developed factual record" about the underlying crime. *United States v. St. Hubert*, 883 F.3d 1319, 1335 (11th Cir. 2018). That feature of § 924(c) prosecutions enables the application of § 924(c)(3)(B) in a case-specific manner that considers a defendant's own conduct. Construing the statute to incorporate such an approach "makes good sense," *id*. at 1334, and is consistent with its text, context, and interpretation by the Supreme Court.

   A.  The text of § 924(c)(3)(B) is consistent with a case-specific approach.

The Supreme Court has previously recognized that, "in ordinary speech[,] words such as 'crime,' 'felony,' 'offense,' and the like . . . sometimes refer to the specific acts in which an offender engaged on a specific occasion." *Nijhawan v. Holder*, 557 U.S. 29, 33-34 (2009). In

4

that case, the Court accordingly interpreted a provision that used the term "offense" as requiring a "'circumstance-specific,' not a 'categorical,' interpretation." *Id.* at 36; *see* 8 U.S.C. § 1101(a)(43)(M)(i). The Court in *United States v. Hayes*, 555 U.S. 415 (2009), likewise construed a statutory reference to "an offense . . . committed by a current or former spouse," 18 U.S.C. § 921(a)(33)(A), as contemplating a factual, rather than a categorical, inquiry. *Hayes*, 555 U.S. at 426. As the Court explained later, the language at issue in *Hayes* was exactly the type of language that Congress would employ as an instruction "to look into the facts" of a crime. *Mathis v. United States*, 136 S. Ct. 2243, 2252 (2016). Section 924(c)(3)(B)'s similar reference to "committing the offense" can thus reasonably be understood to refer to the specific criminal conduct at issue in the § 924(c) prosecution. *See Johnson*, 135 S. Ct. at 2562 (admitting that a reference to the commission of an offense can indicate a case-specific approach).

Section 924(c)(3)(B) also uses the term "involves," a term that Congress repeatedly used in other provisions of the Comprehensive Crime Control Act of 1984 (*i.e.*, the enactment that contained the original "crime of violence" definition for Section 924(c)) in a manner that requires courts to consider a defendant's underlying conduct. *See*, *e.g.*, Pub. L. No. 98-473, § 4243, 98 Stat. 1837, 2059 (Oct. 12, 1984) (elevating the burden of proof for the release of "a person found not guilty only by reason of insanity of an offense involving bodily injury to, or serious damage to the property of, another person, or involving a substantial risk of such injury or damage"); *id*. at § 502, 98 Stat. 2068 (establishing the sentence for drug offenses "involving" specific quantities and types of drugs); *id*. at § 1952B, 98 Stat. 2137 (defining violent crimes in aid of racketeering to include "attempting or conspiring to commit a crime involving maiming, assault with a dangerous weapon, or assault resulting in serious bodily injury"). Although the rule is not invariable, it is a "basic canon of statutory construction that identical terms within an Act bear the same meaning." *Estate of Cowart v. Nicklos Drilling Co.*, 505 U.S. 469, 479 (1992)

5

(citations omitted).  Application of that canon makes particular sense in this context, because the Supreme Court has previously relied on the *absence* of the word "involves" as indicating that a categorical approach is required.  *See*, *e.g.*, *Taylor v. United States*, 495 U.S. 575, 600 (1990).

A jury can readily determine whether a defendant's underlying "offense . . . by its nature, involves" the use of physical force in the course of its commission without needing to consider what the "ordinary case" of that offense might be.  The term "nature" refers to "the basic or inherent features, character, or qualities of something."  Oxford Dictionary of English 1183 (3d ed. 2010).  That "something" can be the defendant's own crime, rather than a stylized "ordinary case."  Congress has, for example, instructed sentencing courts to consider "the nature and circumstances of the offense"—naturally understood as the defendant's own conduct—in determining the appropriate sentence in a federal criminal case.  18 U.S.C. § 3553(a)(1); *see*, *e.g.*, *Schware v. Board of Bar Examiners*, 353 U.S. 232, 242-43 (1957) (describing "the nature of the offense" of a bar applicant as "recruiting persons to go overseas to aid the Loyalists in the Spanish Civil War"); *see also Dimaya*, 138 S. Ct. at 1254 n.7 (Thomas, J., dissenting) (citing other examples).  Similarly, in the context of § 924(c)(3)(B), the phrase "by its nature" can reasonably be read to "mean only that an offender who engages in risky conduct cannot benefit from the fortuitous fact that physical force was not actually used during his offense."  *Dimaya*, 138 S. Ct. at 1254 (Thomas, J., dissenting).  A jury finding the facts of a particular offense is well positioned to also determine its "nature"—*e.g.*, whether a particular conspiracy that was as a factual matter largely or entirely inchoate nevertheless involved a substantial risk that force would be used in its commission.

    B.    <u>The context of § 924(c)(3)(B) supports a case-specific approach</u>.

The position and function of § 924(c)(3)(B) suggest a statutory inquiry that goes beyond the legal definition of an offense.  As noted above, § 924(c)(3)(B) operates in tandem with

6

§ 924(c)(3)(A), which defines a "crime of violence" to include any federal offense that "has as an element the use, attempted use, or threatened use of physical force." By focusing solely on the "elements" of the crime, § 924(c)(3)(A) requires an "elements-based categorical approach" by a court, rather than consideration of "the specific means by which the defendant committed the crime" by a jury. *United States v. Evans*, 848 F.3d 242, 245-46 (4th Cir. 2017); *see, e.g.*, *St. Hubert*, 883 F.3d at 1331; *cf. Mathis*, 136 S. Ct. at 2248 (explaining that the inquiry under a similarly worded ACCA provision "focus[es] solely on whether the elements of the crime of conviction sufficiently match" the statutory definition). Section 924(c)(3)(B), however, is necessarily understood to cover offenses other than those covered by § 924(c)(3)(A). *See Corley v. United States*, 556 U.S. 303, 314 (2009) (explaining the "basic interpretive canon[]" that different provisions of a statute should be interpreted to mean different things). And because § 924(c)(3)(A) already covers all offenses that have the legal element of physical force, § 924(c)(3)(B)'s substantial-risk-of-force standard naturally invites an inquiry that goes outside the four corners of an offense's legal definition.

The customary way to apply a "qualitative standard such as 'substantial risk'" is to do so by reference "to real-world conduct," not platonic legal constructs. *Johnson*, 135 S. Ct. at 2561. "[D]ozens of federal and state criminal laws" use such terms, and "almost all" of them "require gauging the riskiness of conduct in which an individual defendant engages on a particular occasion." *Id*. An "ordinary case" categorical approach is an anomaly, not the norm, and § 924(c)(3)(B)'s "substantial risk" inquiry can thus readily be understood as a mixed question of law and fact that a jury would determine, or that a defendant would admit when pleading guilty.

   C. <u>The reasons for applying the categorical approach to other statutes do not apply</u>.

The Supreme Court has required an "ordinary case" categorical approach only in the context of statutes that are applied to classify prior convictions. The reasons for applying the

7

categorical approach in that context do not extend to § 924(c)(3)(B), which instead applies only to the conduct giving rise to the current prosecution.

The Supreme Court first endorsed a "categorical approach" interpretation of a federal statute in *Taylor*, when considering whether the ACCA's reference to a prior conviction for "burglary" meant burglary as defined by state law or instead referred to "some uniform definition." *Taylor*, 495 U.S. at 580. The Court determined that Congress had intended to refer to burglary in a uniform "generic" sense, id. at 598, and then addressed how the government would prove that a defendant's prior conviction was for "generic burglary," *id*. at 599-602.

The Court resolved that issue by interpreting the ACCA to "mandate[] a formal categorical approach, looking only to the statutory definitions of the prior offenses, and not to the particular facts underlying those convictions." *Id*. at 600. Under that approach, "an offense constitutes 'burglary' for purposes of [an ACCA] sentence enhancement if either its statutory definition substantially corresponds to 'generic' burglary, or the charging paper and jury instructions actually required the jury to find all the elements of generic burglary in order to convict the defendant." *Id*. at 602.

The Court later interpreted the ACCA's now-defunct residual clause, which asked whether a prior conviction "involves conduct that presents a serious potential risk of physical injury to another," 18 U.S.C. § 924(e)(2)(B)(ii), in light of "*Taylor*'s categorical approach." *James v. United States*, 550 U.S. 192, 208 (2007). The Court explained that the categorical approach for the residual clause required an inquiry "whether the conduct encompassed by the elements of the offense, in the ordinary case, presents a serious potential risk of injury . . . ." *Id*.

The Court has also "generally"—but not invariably—"employ[ed] a 'categorical approach'" when "the Government alleges that a state conviction qualifies as an 'aggravated felony' under the INA." *Moncrieffe v. Holder*, 569 U.S. 184, 190 (2013); *see Nijhawan*, 557

8

U.S. at 33-38 (applying a case-specific approach to a particular portion of the "aggravated felony" definition). The Court's use of the categorical approach in that context has extended to 18 U.S.C. § 16, which is incorporated by reference into the aggravated-felony definition, as well as "a variety of [other] statutory provisions, both criminal and noncriminal." *Leocal v. Ashcroft*, 543 U.S. 1, 7 (2004) (also stating that the "language" of § 16 "requires us to look to the elements and the nature of the offense of conviction, rather than to the particular facts relating to [an alien's] crime"); *see also Dimaya*, 138 S. Ct. at 1258 (Thomas, J., dissenting) (viewing *Leocal* as non-binding because *Dimaya* "largely overrules" it).

Significantly, *Taylor* adopted the categorical approach for reasons that were largely specific to the ACCA's focus on prior convictions and have no direct analogue in the context of § 924(c)(3)(B). *See* 495 U.S. at 600-02; *see*, *e.g.*, *id.* at 600 (reasoning that the ACCA required a categorical approach because that statute "refers to 'a person who . . . has three prior convictions' for—not a person who has committed—three previous violent felonies or drug offenses"). At the "heart of the decision" was a limitation on the amount of evidence about the circumstances underlying prior convictions that the parties would be permitted to introduce for the first time at sentencing. *Shepard v. United States*, 544 U.S. 13, 23 (2005); *see Taylor*, 495 U.S. at 601 (deeming "the practical difficulties and potential unfairness of a factual approach . . . daunting" in that context). Prior convictions "that are counted for an ACCA enhancement are often adjudicated by different courts in proceedings that occurred long before the defendant's sentencing." *United States v. Robinson*, 844 F.3d 137, 142 (3d Cir. 2016). In *Taylor*, for example, the two prior burglary convictions at issue had been adjudicated in Missouri state courts at least 17 years before they were introduced to support an enhanced federal sentence under the ACCA for an unrelated federal gun crime. 495 U.S. at 578 & n.1. In such cases, the categorical approach serves the "'practical' purpose[]" of "promot[ing] judicial and

9

administrative efficiency by precluding the relitigation of past convictions in minitrials conducted long after the fact." *Moncrieffe*, 569 U.S. at 200-01 (citation omitted). The same is true for many statutes that incorporate § 16(b), including the immigration statute at issue in *Dimaya*. 138 S. Ct. at 1218 (plurality opinion).

Judicial factfinding about prior convictions also raises concerns about potential violations of the Sixth Amendment, because a judge's resolution of disputed facts underlying a defendant's prior conviction at sentencing would be "too much like" the kind of factfinding that the Sixth Amendment requires the jury to conduct. *Shepard*, 544 U.S. at 25 (plurality opinion); *see also Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000) (holding that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt"). Thus, in the context of the ACCA's residual clause, which increases the statutory sentencing range for certain federal firearm crimes if the defendant has a sufficient number of qualifying prior convictions, the categorical approach was required in order to comply with the "rule of reading statutes to avoid serious risks of unconstitutionality." *Shepard*, 544 U.S. at 25 (plurality opinion). The same is true of many criminal statutes that incorporate § 16(b). *See, e.g.*, 8 U.S.C. § 1326(b)(2) (providing an increased statutory-maximum term of imprisonment for an alien who illegally reenters the United States and has a prior conviction for an "aggravated felony," which includes a "crime of violence" under § 16).

For those practical and constitutional reasons, "[t]he categorical approach serves a purpose when evaluating prior state convictions committed long ago in fifty state jurisdictions with divergent laws." *St. Hubert*, 883 F.3d at 1336. But it does not serve that purpose in the context of § 924(c)(3)(B), where the jury has the factual record of the underlying offense before it and must determine whether the defendant committed that offense before determining whether

the defendant's use, carrying, or possession of a gun violated § 924(c). Unlike in the context of the classification of prior crimes, no practical or constitutional reason exists that would require courts to "analyz[e] a § 924(c) predicate offense in a vacuum." *Robinson*, 844 F.3d at 143. In the trial context, "[t]he jury's determination of the facts of the charged offenses unmistakably shed[s] light on whether the predicate offense" qualifies as a crime of violence. *Id*. at 141. In that circumstance, "[t]he remedial effect of the 'categorical' approach is not necessary." *Id*.

Nor does an underlying-conduct approach give rise to any of the Sixth Amendment concerns that animated the Supreme Court's adoption of the categorical approach. "[A]ny fact that increases the penalty for a crime" under § 924(c), if not specifically admitted by the defendant, is "submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490. Accordingly, the defendant "suffers no prejudice because the court is not finding any new facts which are not of record in the case before it." *Robinson*, 844 F.3d at 143.

    D.    <u>Principles of constitutional avoidance support construing § 924(c)(3)(B) to require a case-specific approach</u>.

A court is "obligated to construe [a] statute to avoid [constitutional] problems" if it is "fairly possible" to do so. *INS v. St. Cyr*, 533 U.S. 289, 300 (2001) (internal citations omitted); *see also Jennings v. Rodriguez*, 138 S. Ct. 830, 836 (2018) ("Under the constitutional-avoidance canon, when statutory language is susceptible of multiple interpretations, a court may shun an interpretation that raises serious constitutional doubts and instead may adopt an alternative that avoids those problems."). That is particularly true where, absent a reasonable limiting construction, a statute could be deemed void for vagueness. *See United States ex rel. Attorney General v. Delaware & Hudson Co.*, 213 U.S. 366, 407 (1909) (noting that courts have a "plain duty" to adopt any "reasonabl[e]" interpretation of a statute that avoids constitutional concerns, rather than invalidating the statute as unconstitutionally vague); *cf. Clark v. Martinez*, 543 U.S.

371, 381 (2005) (noting that the constitutional-avoidance canon "is a tool for choosing between competing plausible interpretations of a statutory text, resting on the reasonable presumption that Congress did not intend the alternative which raises serious constitutional doubts"). A court should not, therefore, lightly conclude that Congress intended § 924(c)(3)(B) to be applied in a manner that would render the statute unconstitutionally vague. Instead, the better interpretation of § 924(c)(3)(B) is that the statute permits consideration of a defendant's real-world conduct in determining whether his offense qualifies as a crime of violence.

2. <u>The facts of this case establish a "substantial risk that physical force against the person or property of another may be used in the course of committing the offense."</u>

While displaying a sawed-off shotgun, petitioner passed a written demand for cash to a bank teller. (PSR at ¶ 7.) Such conduct inherently establishes a "substantial risk" that physical force "may be used" against the teller in the course of petitioner's attempt to rob the bank. And petitioner concedes that, saying that "*certainly* . . . attempted bank robbery by its nature involves a substantial risk that physical force against the person or property of another may be used during the course of committing the offense." (R. 58, § 2255 Motion at 14 (emphasis added).)

Although petitioner now claims he "never used a firearm in relation to the attempted robbery" (R. 58, § 2255 Motion at 15), he previously pleaded guilty to that precise offense. (*See* R. 44, Plea Tr. at 16.) "Judges need not let litigants contradict themselves so readily; a [§ 2255] motion that can succeed only if the defendant committed perjury at the plea proceedings may be rejected out of hand unless the defendant has a compelling explanation for the contradiction." *United States v. Owenby*, No. 2:12-CR-118, 2017 WL 951698, at *6 (E.D. Tenn. Mar. 9, 2017) (quoting *United States v. Peterson*, 414 F.3d 825, 827 (7th Cir. 2005)).

Finally, contrary to petitioner's assertion that "attempted robbery does not qualify as a crime of violence under the 924(c)(3)(B)'s residual clause" (R. 58, § 2255 Motion at 15), the cases he cites

12

for that proposition involved far different scenarios; they merely authorized successive § 2255 motions, post-*Johnson*, regarding the violent-felony or crime-of-violence status of certain attempted robberies. *See In re Still*, No. 16-12509 (11th Cir. June 15, 2016) (deeming it "unclear" whether a Florida conviction for attempted armed robbery would qualify as a violent felony under the ACCA's use-of-force clause); *In re Del Monte*, No. 16-12526 (11th Cir. June 15, 2016) (noting that the court had not yet determined whether attempted Hobbs Act robbery would qualify as a crime of violence under § 924(c)(3)(A)). In each case, the Eleventh Circuit stressed that it had decided only that the petitioner made the requisite *prima facie* showing to justify a successive § 2255 motion, not that the underlying claim would require relief. *E.g.*, *In re Still*, No. 16-12509 at 4 (11th Cir. June 15, 2016).

## CONCLUSION

For the foregoing reasons, petitioner's § 2255 motion should be denied.

Respectfully submitted,

J. Douglas Overbey
United States Attorney

By:  *s/ James T. Brooks*
James T. Brooks
Assistant United States Attorney

## CERTIFICATE OF SERVICE

I certify that on July 19, 2018, this response was filed electronically and a true copy was sent to petitioner by regular United States mail, postage prepaid, addressed as follows:

John Floyd Thomas
No. 42426-074
U.S.P. Lewisburg
P.O. Box 1000
Lewisburg, PA  17837

*s/ James T. Brooks*
James T. Brooks
Assistant United States Attorney

13